UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LAURA BEDSON, individually and on behalf of all
others similarly situated,

Plaintiff,

-against-

BIOSTEEL SPORTS NUTRITION INC.,

Defendant.

Index No.: 1:23-cv-00620

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BIOSTEEL SPORTS NUTRITION INC.'S MOTION TO DISMISS

**HARRIS BEACH PLLC**
Kelly Jones Howell, Esq.
Judi Abbott Curry, Esq.
Wayne L. Gladstone, Esq.
100 Wall Street
New York, New York 10005
(212) 687-0100

*Attorneys for Defendant*
**BIOSTEEL SPORTS NUTRITION INC.**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 3

   I.   PLAINTIFF'S COMPLAINT CONFIRMS THE PERVASIVE NATURE OF PFAS IN THE ENVIRONMENT ........................................ 3

   II.   THE COMPLAINT FAILS TO OFFER SPECIFIC FACTS TO SUPPORT ALLEGATIONS OF ECONOMIC HARM ................................. 4

ARGUMENT .............................................................................................................. 6

   I.   PLAINTIFF'S FAILURE TO SUFFICIENTLY ALLEGE THE PRESENCE OF PFAS IN THE PRODUCT IS FATAL TO ALL CLAIMS ............................................................................................... 6

   II.   PLAINTIFF LACKS ARTICLE III STANDING TO SUSTAIN HER CLAIMS .......................................................................................... 8

       A.   Plaintiff's Conclusory Allegations of Injury Fail to Confer Standing ..................... 9

       B.   New York Court Recently Held Lack of Standing in Similar Purported PFAS Class Action ................................................................. 11

   III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(b)(6) ......................... 12

       A.   Plaintiff's NYGBL §§ 349 and 350 Claims Fail to Allege Any Requisite Deceptive Statement Capable of Plausibly Misleading a Reasonable Consumer ...................................... 12

       B.   Failure to Plead a Deceptive Act is Fatal to Plaintiff's Remaining Claims of Fraud, Constructive Fraud and Unjust Enrichment ........................... 16

   IV.   PLAINTIFF DOES NOT SATISFY THE HEIGHTENED PLEADING STANDARD FOR FRAUD UNDER RULE 9(B) ....................................... 17

       A.   Plaintiff's Complaint Fails to Allege Fraud with Specificity .............................. 18

       B.   Plaintiff Fails to Plausibly Allege that Defendant Had Knowledge of PFAS in the Product ................................................. 19

   V.   PLAINTIFF'S CLAIMS ARE PREEMPTED AND SUBJECT TO FDA'S PRIMARY JURISDICTION ................................................... 21

       A.   Plaintiff's Failure to Disclose Claims Are Preempted ......................................... 21

       B.   The Primary Jurisdiction Doctrine Mandates Dismissal of Plaintiff's Claims ........................................... 23

CONCLUSION .......................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................. 6, 10

*Axon v. Citrus World, Inc.,*
    354 F. Supp. 3d 170 (E.D.N.Y. 2018).................................................... 12, 13

*Baur v. Veneman,*
    352 F.3d 625 (2d Cir. 2003)...................................................................... 9

*Bell Atl. Corp v. Twombly,*
    550 U.S. 544 (2007) ................................................................................. 6

*Bodle v. Johnson & Johnson Consumer,*
    No. 3:21-cv-07742-EMC, 2022 WL 18495043
    (N.D. Cal. Feb. 24, 2022) ....................................................................... 10

*Bowen v. Energizer Holdings, Inc.,*
    No. CV 21-4356-MWF, 2023 U.S. Dist. LEXIS 21654
    (C.D. Cal. Jan. 5, 2023)........................................................................... 10

*Bowring v. Sapporo U.S.A., Inc.,*
    234 F. Supp. 3d 386 (E.D.N.Y. 2017).................................................... 12

*Brown v. Coty, Inc.,*
    Case No. 22 Civ. 2696, 2023 U.S. Dist. LEXIS 54316
    (S.D.N.Y. Mar. 29, 2023)........................................................................ 1

*Brown v. Lockwood,*
    432 N.Y.S.2d 186 (N.Y. App. Div. 1980) ............................................. 17

*Campbell v. Whole Foods, Mkt. Grp, Inc.,*
    516 F. Supp. 3d 370 (S.D.N.Y. 2021)................................................... 12

*Chufen Chen v. Dunkin' Brands, Inc.,*
    954 F.3d 492 (2d Cir. 2020).................................................................. 12

*Cohen v. JP Morgan Chase & Co.,*
    498 F.3d 111 (2d Cir. 2007)................................................................... 12

*Corsello v. Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012) ........................................................................... 17

*Devaney v. Chester*,
   813 F.2d 566 (2d Cir. 1987) ................................................................. 19

*Dicicco v. PVH Corp.*,
   No. 19 Civ. 11092, 2020 U.S. Dist. LEXIS 160465
   (S.D.N.Y. Sept. 2, 2020) ...................................................................... 19

*Doss v. Gen. Mills, Inc.*,
   No. 18-619240-Civ, 2019 U.S. Dist. LEXIS 100791
   (S.D. Fla. June 14, 2019), *aff'd*,  816 F. App'x 312 (11th Cir. 2020) ...................................... 10

*Duchimaza v. Niagara Bottling, LLC*,
   619 F. Supp. 3d 395 (S.D.N.Y. 2022) .................................................. 23

*Duprere v. Ethicon, Inc.*,
   No. 21cv2605, 2022 U.S. Dist. LEXIS 31096
   (S.D.N.Y. Feb. 22, 2022) ...................................................................... 19

*Ellis v. Tribune Television Co.*,
   443 F.3d 71 (2d Cir. 2006) ................................................................... 23

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................. 12

*Gaminde v. Lang Pharma Nutrition, Inc.*,
   No. 1:18-cv-300, 2019 U.S. Dist. LEXIS 48595
   (N.D.N.Y. Mar. 25, 2019) ................................................................. 8, 10

*GMO Free USA v. Cover Girl Cosmetics, et al.*
   No. 2021 CA 004786 B, (Sup. Ct. D.C., June 1, 2022) ......................... 1

*Golden Hill Paugussett Tribe of Indians v. Weicker*,
   39 F.3d 51 (2d Cir. 1994) ..................................................................... 23

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985) ............................................................... 19

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009) ..................................................................... 7

*Harris v. Pfizer, Inc.*,
   586 F. Supp. 3d 231 (S.D.N.Y. 2022) ............................... 14, 15, 19, 20

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
No. 08-1967, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ................................................. 22

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
No. 1:21-cv-269, 2022 U.S. Dist. LEXIS 189822
(E.D. Va. Oct. 17, 2022) ................................................................................................ 24

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008) .................................................................... 22, 23

*Lerner v. Fleet Bank. N.A.*,
459 F.3d 273 (2d Cir. 2006) ................................................................................... 17, 20

*Lujan v. Defs of Wildlife*,
504 U.S. 555 (1992) .................................................................................................... 8

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) .......................................................................................... 9

*Myers v. Wakefern Food Corp.*,
No. 20 Civ. 8470, 2022 U.S. Dist. LEXIS 35981
(S.D.N.Y. Mar. 1, 2022) ............................................................................................. 8

*Onaka v. Shiseido Ams. Corp.*,
21-cv-10665, 2023 U.S. Dist. LEXIS 53220
(S.D.N.Y. Mar. 28, 2023) ................................................................................. 1, 9, 11

*Oswego Laborers' Local 214 Pension Fund v.*
*Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (1995) .................................... 15, 16, 17

*Palmer v. Amazon.com, Inc.*,
51 F.4th 491 (2d Cir. 2022) ................................................................................ 23, 24

*Parks v. Ainsworth Pet Nutrition*,
377 F. Supp. 3d 241 (S.D.N.Y. 2019) ...................................................................... 14

*Reiter v. Cooper*,
507 U.S. 258 (1993) .................................................................................................. 21

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
68 F.3d 1478 (2d Cir. 1995) ..................................................................................... 19

*Richberg v. ConAgra Brands, Inc.*,
Case No. 22 CV 2420, 2023 U.S. Dist. LEXIS 21137
(N.D. Ill. Feb. 8, 2023) ............................................................................................... 1

*Ruiz v. ConAgra Brands, Inc.,*
   Case No. 22 CV 2421, 2023 U.S. Dist. LEXIS 21137
   (N.D. Ill. Feb. 8, 2023) .......................................................................................... 1

*Santiful v. Wegmans Food Mkts. Inc.,*
   No. 20-CV-2933, 2022 U.S. Dist. LEXIS 15994
   (S.D.N.Y. Jan. 28, 2022) ........................................................................................ 8

*Schloegel v. Edgewell Pers. Care Co.,*
   No. 4:21-cv-00631, 2022 U.S. Dist. LEXIS 46393
   (W.D. Mo. Mar. 16, 2022) ...................................................................................... 10

*Solis v. Coty, Inc,.*
   Case No. 22-cv-0400, 2023 U.S. Dist. LEXIS 38278
   (S.D. Cal. Mar. 7, 2023) ..................................................................................... 1, 14

*Strubel v. Comenity Bank,*
   842 F.3d 181 (2d Cir. 2016) .................................................................................... 8

*Turnipseed v. Simply Orange Juice Co.,*
   No. 20 Civ. 8677, 2022 U.S. Dist. LEXIS 38823
   (S.D.N.Y. Mar. 4, 2022) ..................................................................................... 7, 8

*Twohig v. Shop-Rite Supermarkets, Inc.,*
   519 F. Supp. 3d 154 (S.D.N.Y. 2021) ...................................................................... 16

*U.S. ex rel. Kester v. Novartis Pharm. Corp.,*
   23 F. Supp. 3d 242 (S.D.N.Y. 2014) ........................................................................ 17

*U.S. ex rel. Polanksy v. Pfizer, Inc.,*
   No. 04-cv-0704 2009 U.S. Dist. LEXIS 43438
   (E.D.N.Y. May 22, 2009) ........................................................................................ 18

*U.S. ex rel. Youssef v. Tishman Constr. Corp.,*
   No. 12-cv-03862, 2017 U.S. Dist. LEXIS 15823
   (E.D.N.Y. Feb. 2, 2017) .......................................................................................... 20

*Wexner v. First Manhattan Co.,*
   902 F.2d 169 (2d Cir. 1990) .................................................................................... 20

*Womack v. EVOL Nutrition Assocs.,*
   No. 21-332, 2021 U.S. LEXIS 238347
   (N.D.N.Y. Dec. 14, 2021) ........................................................................................ 16

*Wright v. Publrs. Clearing House, Inc.,*
   439 F. Supp. 3d 102 (E.D.N.Y. 2020) ...................................................................... 7

**Statutes**

21 U.S.C. § 343-1(a)(2) ................................................................... 21, 22

NYGBL § 349 ........................................................................ 2, 12, 13, 15

NYGBL § 350 ............................................................................. 2, 12, 13

NYGBL § 349(d) ................................................................................... 23

NYGBL § 350-d(b) ............................................................................... 23

**Rules**

Fed. R. Civ. P. Rule 9(b) ................................................................. 3, 17

Fed. R. Civ. P. Rule 12(b)(1) ................................................................ 8

Fed. R. Civ. P. Rule 12(b)(6) ..................................................... 2, 6, 10

**Regulations**

21 C.F.R. § 100.1(c)(4) ....................................................................... 21

21 C.F.R. § 101.100(a)(3)(iii) ............................................................. 22

## PRELIMINARY STATEMENT

Based solely on the undisclosed results of her own "independent" testing—devoid of any details regarding the methodology or sample used—Plaintiff alleges Defendant BioSteel Sports Nutrition Inc. ("BioSteel") improperly marketed its Blue Raspberry-flavored Sports Drink product (the "Product") by failing to disclose the purported presence of certain per- and polyfluoroalkyl substances, commonly known as "PFAS." In doing so, this lawsuit is just one of a growing number of class actions around the country seeking to expand certain concepts of liability whereby a product label's omission of any incidental presence of a substance (here, PFAS) would be tantamount to a corporate fraud and consumer deception. Plaintiff's theories are fundamentally flawed, and accordingly this matter should be dismissed and join the growing list of PFAS cases holding such vague and speculative allegations fail to support claims based on consumer fraud state statutes, fraud, constructive fraud, and unjust enrichment.[1]

Plaintiff's pleading deficiencies provide several independent bases for dismissal. First, Plaintiff's conclusory and unspecific testing allegations do not sufficiently establish the presence of PFAS in the Product, which is fatal to all claims. Plaintiff does not specifically allege Defendant used PFAS intentionally, that it knowingly added PFAS as an ingredient, or that PFAS was even present in the Product she allegedly purchased. There are no specifically pled facts regarding Defendant's alleged knowledge of the purported PFAS presence, constructive or otherwise. Instead, Plaintiff bases her entire case solely on the conclusory allegation of detection of PFAS in

---

[1] *See Brown v. Coty, Inc.,* Case No. 22 Civ. 2696, 2023 U.S. Dist. LEXIS 54316 (S.D.N.Y. Mar. 29, 2023); *Onaka v. Shiseido Ams. Corp.*, 21-cv-10665, 2023 U.S. Dist. LEXIS 53220 (S.D.N.Y. Mar. 28, 2023); *Richberg v. ConAgra Brands, Inc.,* Case No. 22 CV 2420, 2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023); *Ruiz v. ConAgra Brands, Inc.,* Case No. 22 CV 2421, 2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023); *Solis v. Coty, Inc.*, Case No. 22-cv-0400, 2023 U.S. Dist. LEXIS 38278 (S.D. Cal. Mar. 7, 2023); *GMO Free USA v. Cover Girl Cosmetics, et al.* No. 2021 CA 004786 B, (Sup. Ct. D.C., June 1, 2022) (unpublished opinion annexed as **Exhibit A**).

the Product via undisclosed testing. Despite tethering four causes of action to this slender reed, the Complaint is silent on this testing's date, time, place, methodology, sample size, and specific results.

Second, even if, *arguendo*, a PFAS presence were in *some* BioSteel Product, Plaintiff still lacks Article III standing to seek damages because the Complaint fails to contain any plausible basis to allege the specific Product(s) she purchased contained PFAS. The Complaint contains no information on the PFAS levels allegedly detected aside from counsel's conclusory assertion that they are "material" and "significant," which is based on irrelevant comparisons to distinguishable EPA-proposed guidelines regarding *lifetime exposure* in *drinking water*, inapplicable to this FDA-regulated food. Without a plausible causal connection between the alleged presence of PFAS in the Product at issue and Plaintiff's claimed economic injury, this matter should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) as other similar New York cases have held.

Third, the Complaint also fails to state a cause of action because it does not identify a deceptive statement capable of misleading a reasonable consumer as required by New York General Business Law §§ 349, 350 ("NYGBL") and Plaintiff's related fraud, constructive fraud, and unjust enrichment claims.[2] It is uncontested that Defendant's Product labeling contains no "PFAS-free" representations and the listed ingredients show PFAS are not intentionally added. Plaintiff lists a myriad of nutritional and environmental representations on the Product's labeling (e.g., Zero Sugar, Vegan, Gluten-free), none of which are disputed as inaccurate. Instead, Plaintiff

---

[2] Although ¶ 12 of the Complaint asserts Plaintiff is also bringing a claim for "breach of express warranty," no such cause of action is pled anywhere in the Complaint, and Defendant therefore moves to dismiss any purported ancillary claims such as breach of warranty (to the extent its pleading is even recognized by this Court). *See* Fed. R. Civ. P. Rule 12(b)(6).

claims these representations are objectively misleading because of the alleged undisclosed presence of PFAS. Plaintiff pleads not a single fact to support the conclusory allegations that Defendant possessed such material information or that it "knew or should have known" about the alleged presence of PFAS.  This failure to allege any deceptive act is fatal to Plaintiff's claims because they are all premised on the implausible assertion that Defendant's Product labeling[3] is materially misleading despite having no relation to PFAS.  Moreover, Plaintiff has equally failed to plead fraud with specificity as the Complaint lacks any details pertaining to knowledge by the Defendant of any materially misleading facts regarding the alleged PFAS presence in the Product and therefore fails to meet the heightened pleading standards of Fed. R. Civ. P. Rule 9(b).

Lastly, Plaintiff essentially seeks to impose a PFAS-disclosure requirement for product labels entirely different from the requirements of the federal regulatory scheme set forth by the U.S. Food and Drug Administration (FDA) and therefore all claims are subject to preemption. FDA has already signaled an intent to regulate PFAS in food and beverages, which falls squarely within the FDA's primary jurisdiction and should be left to the special competence of that administrative agency. For all these reasons, Defendant respectfully requests the Court to reject Plaintiff's leaps in logic and dismiss this lawsuit in its entirety, with prejudice.

## **FACTUAL BACKGROUND**

### **I.    PLAINTIFF'S COMPLAINT CONFIRMS THE PERVASIVE NATURE OF PFAS IN THE ENVIRONMENT**

Presumably due to the nascent stage of PFAS litigation, Plaintiff has provided a host of footnoted and varied references in her Complaint from sources as diverse as non-peer reviewed websites to EPA publications, explaining the nature and purported dangers of PFAS in the

---

[3] The label of Blue Raspberry-flavored Sports Drink is produced in the Complaint at ¶¶ 5, 24, 25, 26, and 34.

environment. As Plaintiff is pleading an economic (and not medical) injury, these materials are irrelevant to adjudicating the present motion to dismiss. Nevertheless, it is significant to note that even Plaintiff's own cited sources undermine her claims of fraud and deception as they admit PFAS to be ubiquitous and unavoidable at trace levels. *See* Footnote 18 of Complaint ("FN") (EPA noting "their widespread use and their persistence in the environment"). Despite the prevalence of PFAS, Plaintiff attempts to take the untenable position that their alleged and undisclosed presence in the Product at any level constitutes consumer fraud resulting in economic injury.

## II.     THE COMPLAINT FAILS TO OFFER SPECIFIC FACTS TO SUPPORT ALLEGATIONS OF ECONOMIC HARM

The Complaint fails to provide this Court with the necessary factual allegations regarding Plaintiff's Product purchase and testing to support her allegations. Specifically, Plaintiff alleges she purchased the Product "numerous times online from amazon.com." Complaint ¶ 97. No specific allegation is made regarding the manufacturing batch or lot numbers of the Product(s) Plaintiff allegedly bought, nor the dates of such alleged purchases. According to Plaintiff, unspecified "independent third-party testing" detected "significant" and "material" levels of several PFAS chemicals in the Products. Complaint ¶¶ 63–65. Aside from Plaintiff's conclusory statement that the testing was purportedly "conducted in accordance with accepted industry standards for detecting the presence of PFAS" (Complaint ¶ 64), she provides no details regarding such testing, including who conducted the testing, when the testing occurred, how many batches were tested, whether Plaintiff purchased or used Products from any tested batch(es), what methodology was used for the testing, how "significant" and "material" levels were determined, or the specifics of what the testing found.

Plaintiff's only factual allegation regarding the PFAS levels allegedly found in the Product relates to Perfluorooctanoic acid ("PFOA"), one of many PFAS analytes, which Plaintiff claims

was found in the Product at a level that "exceeds the amount of PFOA permitted in water by the EPA." Complaint ¶ 69. Significantly, the only quantification of PFOA allegedly found is given in terms of "exceeding" EPA "advisory levels for PFOA exposure in drinking water" – "0.004 part per trillion." Complaint ¶¶68, 69. Yet the Complaint provides no support for this EPA-based claim as the footnoted citation (a "Healthline" website article linked at footnotes 35 and 36) makes no mention of any specific EPA advisory. More importantly, an EPA interim advisory is not a relevant or binding guidance for an FDA-regulated product, like Defendant's Product, especially when referring to "lifetime exposure" to drinking water rather than occasional consumption of a 16.7 oz. sports drink as generally noted by the EPA reference presumably relied upon by Plaintiff.[4]

Based on the alleged presence of PFAS in the Product —in an unquantified level—Plaintiff challenges Defendant's general representations such as "designed with sustainability in mind" and "good for you and the environment" as tantamount to deceptively marketing the Product as PFAS-free. Complaint ¶¶ 4-10, 23-36. Incredibly, the Complaint points to the Defendant's website, listing a host of product qualities—unrelated to PFAS—in support of Plaintiff's deceptive advertising claim, including:

- Zero Sugar
- Essential Electrolytes
- Vegan
- Non-GMO
- Gluten Free

---

[4] Review of the actual EPA website on PFAS clarifies that Plaintiff's reference is taken from the EPA's "interim" "lifetime health advisory levels," which are set to "protect all people, including sensitive populations and life stages, from adverse health effects resulting from exposure throughout their lives to [PFAS] in drinking water." *See* https://www.epa.gov/sdwa/questions-and-answers-drinking-water-health-advisories-pfoa-pfos-genx-chemicals-and-pfbs#q3; https://www.epa.gov/sites/default/files/2016-11/documents/clarification_memo_pfoapfos_dw_has.pdf. (EPA stating that its PFAS drinking water health advisories "only apply to exposure scenarios involving drinking water" and that "**[c]alculation of specific risk levels for foods would require development of entirely different exposure assumptions**"). (emphasis added).

- Recyclable
- Plant-Based Cap
- BPA/PET Free
- Packaging Made from renewable Sources
- 12 x 16.7 fl oz Tetra Pak Bottles

(Complaint ¶ 27).

Rather than identifying deceptive statements, the Complaint merely itemizes all of Defendant's Product representations (that objectively have nothing to do with PFAS, *e.g.*, "Zero-Sugar") in support of her consumer fraud and related claims. As expressed further below, based on these deficient allegations, Plaintiff cannot meet the requirements for Article III standing or any of her causes of action, all of which must be accordingly dismissed.

## ARGUMENT

### I.  PLAINTIFF'S FAILURE TO SUFFICIENTLY ALLEGE THE PRESENCE OF PFAS IN THE PRODUCT IS FATAL TO ALL CLAIMS

Plaintiff fails to allege sufficient facts regarding any PFAS contamination of the Product to state a plausible claim as a matter of law. *See Bell Atl. Corp v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Despite the allegations of some (unpled) amount of PFAS in the Product based solely on Plaintiff's testing, the Complaint is silent as to this testing's specific date, time, place, sample size, methodology or results. Under Fed. R. Civ. P. Rule 12(b)(6) a complaint must contain facts that sufficiently "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. Specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly,* 550 U.S. at 555 (quotation marks omitted). Without this requisite specificity, plaintiffs cannot "raise a right to relief above the speculative level." *Id.* While "a court must accept as true all of the allegations contained in a complaint," Second Circuit decisions adjudicating Rule 12(b)(6) motions rely on "judicial experience and

6

common sense" in rejecting "mere conclusory statements." *Wright v. Publrs. Clearing House, Inc.,* 439 F. Supp. 3d 102, 109 (E.D.N.Y. 2020) citing *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009).

Indeed, there is no information pled on the actual PFAS levels allegedly detected, aside from Plaintiff's own conclusory assessment that they are "material" and "significant." *See* Complaint ¶ 65. Further, Plaintiff does not even distinguish whether the results of the tests conducted were to the Product's exterior packaging or the liquid beverage inside. Even more problematic, this vague pronouncement is pled only in a misguided comparison to the EPA's *proposed* "lifetime health advisory levels for PFOA exposure in drinking water," which are inapplicable to FDA-regulated food, like the Product at issue. Complaint ¶¶ 65-69. In the absence of any quantification within her Complaint, Plaintiff essentially urges this Court to accept a "near zero" level of PFAS as a threshold. Complaint ¶ 67.

Even in a motion to dismiss, courts are "not required to accept Plaintiff's conclusory statements without more." *Turnipseed v. Simply Orange Juice Co.*, No. 20 Civ. 8677, 2022 U.S. Dist. LEXIS 38823, *14 (S.D.N.Y. Mar. 4, 2022). In *Turnipseed,* 2022 U.S. Dist. LEXIS 38823, at *15, the Southern District dismissed a complaint because plaintiff's conclusory allegations regarding the subject product's vanilla flavoring were too speculative given the limited testing information provided in the Complaint:

> Plaintiff claims that the Product was allegedly subjected to a laboratory test, but she fails to provide any details whatsoever about what this laboratory test entailed. She does not, for instance, describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc.

*Id.*

Accordingly, the Court dismissed that complaint because in the absence of testing details, "Plaintiff's conclusory allegations alone [prevented] the Court [from] draw[ing] a reasonable inference" of the claims alleged. *Turnipseed,* 2022 U.S. Dist. LEXIS 38823, at *15; *see also*

*Santiful v. Wegmans Food Mkts. Inc.*, No. 20-CV-2933, 2022 U.S. Dist. LEXIS 15994, *8, *15 (S.D.N.Y. Jan. 28, 2022) (dismissing complaint because of plaintiff's failure to "plausibly allege" artificial flavors "[w]ithout any information about the alleged lab analysis."); *Myers v. Wakefern Food Corp.,* No. 20 Civ. 8470, 2022 U.S. Dist. LEXIS 35981, *20 (S.D.N.Y. Mar. 1, 2022) (dismissing Complaint alleging presence of artificial flavors because Complaint failed to describe any details about the lab testing method, date, time, place, and who conducted the testing).

Similar to the *Turnipseed*, *Santiful* and *Myers* courts, this Court should dismiss Plaintiff's Complaint due to the absence of testing details. It is beyond cavil that there can be no claims of fraud and deceptive practices regarding the sale of an allegedly PFAS-containing product when this Court has been provided no plausible basis to believe Defendant's Products contain PFAS. As a matter of law, Plaintiff's failure to plausibly allege the presence of PFAS in the Product defeats each of her claims as her entire case depends on that threadbare allegation.

## II.    PLAINTIFF LACKS ARTICLE III STANDING TO SUSTAIN HER CLAIMS

While Plaintiff fails to provide any plausible basis to believe any BioSteel Product contains PFAS, the Complaint's deficiencies are even more stark regarding the claim that Plaintiff actually purchased an allegedly PFAS-containing Product. Without a plausible causal connection between the alleged presence of PFAS in the Product at issue and Plaintiff's claimed economic injury, this matter should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. Rule 12(b)(1).

Article III standing requires a plaintiff to "demonstrate (1) 'injury in fact' (2) a 'causal connection' between that injury and the complained of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Strubel v. Comenity Bank,* 842 F.3d 181, 187-88 (2d Cir. 2016) *quoting Lujan v. Defs of Wildlife,* 504 U.S. 555 (1992); s*ee also Gaminde v. Lang Pharma Nutrition, Inc.,* No. 1:18-cv-300, 2019 U.S. Dist. LEXIS 48595 (N.D.N.Y. Mar. 25, 2019) (standing requires that plaintiff prove by a preponderance of evidence that he suffered an injury in

fact which is concrete and particularized, such that the injury affects the plaintiff in a personal and individual way). Even under the lenient standard of review for "standing at the pleading stage . . . a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman,* 352 F.3d 625, 636-37 (2d Cir. 2003). Plaintiff still "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox v. Bank of New York Mellon Tr. Co., N.A.,* 19 F.4th 58, 65-66 (2d Cir. 2021).

### A. Plaintiff's Conclusory Allegations of Injury Fail to Confer Standing

Only conjecture supports Plaintiff's attempt to allege an injury under a "price premium" theory that "Plaintiff and putative Class Members would not have purchased Defendant's Product or they would have paid less for them" if advised of the Product's alleged PFAS content. Complaint ¶ 86. Specifically, the Complaint contains no plausible allegations "to demonstrate that [plaintiff] actually purchased adulterated products . . . ." *Onaka v. Shiseido Ams. Corp.*, 21-cv-10665, 2023 U.S. Dist. LEXIS 53220, at *12 (S.D.N.Y. Mar. 28, 2023). Instead, Plaintiff alleges only that she purchased the Product "numerous times online from amazon.com." Complaint ¶ 97. No additional information is provided for this Court to tie these purchases to the testing that allegedly detected PFAS.  Plaintiff does not provide the dates or number of transactions that purportedly constitute "numerous" purchases. Furthermore, Plaintiff not only fails to plead the Product(s) she actually purchased were tested, but she does not even claim that Products from the same batch she purchased were tested. Thus, she fails to plead a "particularized" injury.

There can be no causal connection between Plaintiff's claims against the Product and her alleged economic injury, if any.  Further, even after acknowledging "the composition of the Product may change over time," Complaint ¶ 100, Plaintiff asks this Court to accept that an unknown amount of PFAS, allegedly detected in an unknown number of products from an

unknown sample size, tested at an unknown time in relation to her alleged purchase(s) somehow sufficiently pleads Plaintiff purchased a PFAS-containing Product. However, facts indicating the "mere possibility of misconduct" are insufficient under Rule 12(b)(6). *Iqbal*, 556 U.S. at 679.  As such, Plaintiff's Complaint has none of the markers of reliability to raise its conclusory allegations to the requisite level of plausibility.

Without such plausibility, Federal courts routinely hold such deficient allegations of third-party testing or studies indicating contamination of only certain batches as insufficient to support claims a plaintiff purchased a contaminated product. *See, e.g., Gaminde,* 2019 U.S. Dist. LEXIS 48495, at *6 ("[I]t is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that Gaminde purchased must as well."); *Doss v. Gen. Mills, Inc.,* No. 18-619240-Civ, 2019 U.S. Dist. LEXIS 100791, at *6 (S.D. Fla. June 14, 2019), *aff'd*,  816 F. App'x 312 (11th Cir. 2020) (finding that plaintiff lacked standing where she did not "allege that the Cheerios she herself bought actually contain[ed] any glyphosate—just that some Cheerios that have been tested do").[5]

---

[5] *See also, e.g., Bodle v. Johnson & Johnson Consumer,*  No. 3:21-cv-07742-EMC, 2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) (dismissing for lack of standing and holding that even testing which revealed 23 contaminated batches were not enough for the complaint to claim systemically contaminated batches or the purchase of a contaminated product.); *Bowen v. Energizer Holdings, Inc.*, No. CV 21-4356-MWF, 2023 U.S. Dist. LEXIS 21654 at *28 (C.D. Cal. Jan. 5, 2023) (holding plaintiff's lack of allegations to have purchased product from tested batch was fatal to standing analysis because "economic harm premised on speculative risks cannot establish Article III standing"); *Schloegel v. Edgewell Pers. Care Co.,* No. 4:21-cv-00631, 2022 U.S. Dist. LEXIS 46393, at * 6 (W.D. Mo. Mar. 16, 2022) (finding plaintiff lacked standing where she alleged that samples of defendant's sunscreen products contained benzene but "failed to allege that she actually purchased Banana Boat Sunscreen products which were adulterated with benzene").

**B.  New York Court Recently Held Lack of Standing in Similar Purported PFAS Class Action**

In a recent and remarkably analogous matter, the Southern District of New York dismissed a case for lack of standing when plaintiffs' complaint, containing the same omission claims as here, was too vague to plausibly allege a connection between the claimed injury and the plaintiffs – specifically that plaintiffs had purchased any PFAS-containing products. *See Onaka,* 2023 U.S. Dist. LEXIS 53220, at *12. There, plaintiffs alleged an economic injury by purchasing products labeled "clean" and "natural" that allegedly contained PFAS and attempted to claim a connection between plaintiffs and the injury based only upon their own testing and reports of PFAS in the industry. *Id.* In dismissing the case based on lack of standing, the *Onaka* court held (on similar facts as here) that plaintiffs' "Complaint [did] not allege Plaintiffs tested any of their own purchases for PFAS." *Id.* Accordingly, plaintiff's "claims [were] too speculative to confer standing." *Onaka*, 2023 U.S. Dist. LEXIS 53220, at *16.

Lastly, having failed to allege any specific facts connecting Plaintiff's alleged purchase to claimed economic injury, the Complaint also provides no plausible basis for this Court to believe PFAS contamination, if present at all, is so widespread in the Product's production that standing should be assumed. While the Complaint references a few irrelevant studies and environmental findings regarding the presence and dangers of PFAS in the environment, it also contains no relevant studies, publications, or investigations of any kind regarding the detection of PFAS in sports drink products, let alone Defendant's specific Product. Complaint ¶¶ 40-52. As such, there are "no facts from which [this] Court could extrapolate that [plaintiff's] isolated testing should apply broadly to Defendant's Products, regardless of when they were purchased." *Id.* at *13. Accordingly, the Complaint should be dismissed for lack of standing under Rule 12(b)(1).

### III.     PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(b)(6)

Even if this Court were to find Plaintiff's threadbare independent testing allegations sufficient to assert a claim that Plaintiff purchased a Product containing unspecified, trace amounts of PFAS, this Complaint would still require dismissal for Plaintiff's failure to identify any deceptive or fraudulent marketing of the Product by Defendant. Plaintiff's failure to plead any plausible misleading omission or act of deception is fatal to all her claims. *See Axon v. Citrus World, Inc.,* 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018).

### A. **Plaintiff's NYGBL §§ 349 and 350 Claims Fail to Allege Any Requisite Deceptive Statement Capable of Plausibly Misleading a Reasonable Consumer**

Plaintiff fails to identify any deceptive statement by Defendant required to assert claims under New York General Business Law §§ 349 and 350 ("NYGBL"). Such general allegations fail to state a valid claim under NYGBL §§ 349 and 350, where a plaintiff must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.,* 954 F.3d 492, 500 (2d Cir. 2020). Specifically, "plaintiff must plausibly allege that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances could be misled." *Campbell v. Whole Foods, Mkt. Grp, Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017).[6]

---

[6] "It is well-settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink,* 714 F.3d at 741; *see also Cohen v. JP Morgan Chase & Co*., 498 F.3d 111, 126 (2d Cir. 2007) (holding "the New York Court of Appeals has adopted an objective definition of 'misleading'. . . .").

Significantly, it is uncontested that Defendant's Product labeling contains no "PFAS-free" representations and the listed ingredients show PFAS are not intentionally added. Complaint at ¶¶ 5, 24, 25, 26, and 34. Accordingly, even by Plaintiff's own admissions in her Complaint, any alleged PFAS presence would be incidental. *Id.* Given these facts, Plaintiff resorts to claiming that Defendant's general representations regarding the product's qualities such as "designed with sustainability in mind" and "good for you and the environment" deceptively market the Product as a "safe and healthy sports drink." Complaint ¶¶ 4-10, 23-36. Incredibly, the Complaint points to the Defendant's website, listing a host of undisputed Product qualities—none of which have anything to do with PFAS— in support of Plaintiff's faulty deceptive advertising claim, including but not limited to "Zero Sugar," "Non-GMO," and "Plant-Based Cap."[7] Accordingly, rather than identifying a ***deceptive*** statement, Plaintiff asks this Court to hold that the totality of Defendant's general Product representations, that objectively have nothing to do with PFAS, violate NYGBL because they do not address the PFAS contamination alleged only by her counsel and based upon testing with unpled methodology and results. However, Plaintiff's flawed theory should be rejected as nothing about the referenced Product representations would reasonably be taken as a statement about the presence or absence of PFAS in the Product.

In a case on point, *Axon v. Citrus World, Inc.,* 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), this Court dismissed plaintiffs' NYGBL §§ 349 and 350 claims, holding that the trace amounts of glyphosate allegedly detected in defendant's "Florida Natural" orange juice could not support plausible allegations of consumer deception. Significantly, there, as here, the offending substance was "not an 'ingredient' added to defendant's products." *Id.* The Court held as a matter of law it

---

[7] A full list of product representations that are undisputed as accurate can be found in the Background section of this brief at pages 6–7.

was "not plausible to allege that a reasonable consumer would interpret the brand label "Florida's Natural" as meaning that the product contains no traces of glyphosate…." *Id.* at 183; *see also Parks v. Ainsworth Pet Nutrition*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (holding "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products"). Similarly, here, the Court should find reasonable consumers would not interpret the statements on the Product packaging or advertising referenced in Plaintiff's Complaint as meaning there are no traces of PFAS. Thus, Plaintiff's incorrect interpretation is entirely unreasonable and contrary to the purpose of NYGBL.

Contrary to the case law above, Plaintiff seeks to stretch the legitimate purposes of NYGBL by claiming even more ambiguous terms like "good" are objectively misleading to a reasonable consumer due to the Product's alleged PFAS content in conjunction with irrelevant product quality representations. Such a vague theory is routinely rejected by Courts who ***require allegations of specific misrepresentations, not a plaintiff's subjective inference***, to sustain a NYGBL claim. *See*, *e.g.*, *Harris v. Pfizer, Inc.*, 586 F. Supp. 3d 231, 243 (S.D.N.Y. 2022). In *Harris,* the Southern District granted defendant's Rule 12(b)(6) motion, regarding economic harm suffered by the purchase of a product allegedly containing nitrosamine due, in part, to plaintiff's failure to "identify any misleading statement." *Id*.  Notably, the Court held a "plaintiff does not have a claim under the NYGBL just because she comes away from an advertisement with an incorrect impression. That impression must be reasonably traceable to a misleading statement from the defendant." *Id.* at 243-244; s*ee also Solis v. Coty, Inc.*, Case No. 22-cv-0400, 2023 U.S. Dist. LEXIS 38278, at *20-21 (S.D. Cal. Mar. 7, 2023) (dismissing because plaintiff "cannot identify a misrepresentation in defendant's marketing materials" and holding that general safety and

environmental advertising is "far too generalized to reasonably be construed as representations about [a] product's PFAS content.").

Lastly, while the New York Court of Appeals has held NYGBL § 349 prohibits "representations or omissions . . . likely to mislead a reasonable consumer" the cause of action also cannot survive under any claim Defendant "omitted" an alleged PFAS presence in the Product. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Specifically, the New York Court of Appeals in *Oswego* held that in order to avoid a tidal wave of litigation against businesses that was not intended by enacting GBL § 349, courts must apply an objective definition of deceptive acts and practices, whether they are representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances. *Id.*  In the case of omission claims in particular, the question becomes whether "the business alone possesses material information that is relevant to tahe consumer and fails to provide this information." *Id.* Accordingly, in *Harris,* 586 F. Supp. 3d at 244, the Southern District dismissed NYGBL claims against defendant Pfizer for an alleged omission that its product, the stop-smoking drug Chantix, had nitrosamine contamination finding that the plaintiff failed to identify a statement that was "rendered false or misleading by any omission." *Id*. at 241. Unlike here, *Harris* contained no factual dispute regarding that contamination, as Pfizer issued a recall a year after the plaintiff's purchase of the product. Nonetheless, the Court still dismissed the NYGBL claims, holding "plaintiff's conclusory assertions [were not] sufficient to plausibly establish that Pfizer knew about any nitrosamine contamination in the medication that the plaintiffs purchased at the time they purchased it."  *Id*. at 244.

Here, Plaintiff alleges in conclusory fashion that "[a]t all times relevant to this action, Defendant knew, or at minimum should have known, that its Product contains PFAS."  Complaint

¶ 70; *see Womack v. EVOL Nutrition Assocs.,* No. 21-332, 2021 U.S. LEXIS 238347, at \*29 (N.D.N.Y. Dec. 14, 2021) (dismissing NYGBL omissions claims where "the sole allegation regarding Defendant's knowledge [was] vague and conclusory [as it alleged] that 'Defendant knew or should have known [of the potential serious dangers]'"). At the outset, this type of alleged constructive knowledge, claiming a defendant "should have known" is defective on its face, as the New York Court of Appeals requires a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way. *See Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 25. Furthermore, there is absolutely no support given for Defendant's alleged actual knowledge anywhere in the entirety of the Complaint. The requisite knowledge pled is not just deficient—but is nonexistent—justifying dismissal of Plaintiff's NYGBL claims.

## B. Failure to Plead a Deceptive Act is Fatal to Plaintiff's Remaining Claims of Fraud, Constructive Fraud and Unjust Enrichment

Without any showing of a deceptive act, Plaintiff's remaining claims for fraud, constructive fraud, and unjust enrichment all fail because, other pleading requirements aside, plausibly pled deception is a threshold requirement for each of these claims. In the highly analogous *Twohig v. Shop-Rite Supermarkets, Inc*., 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021), the Southern District dismissed all claims regarding allegedly deceptively labeled Soy Milk after holding the product label was not misleading under NYGBL:

> Plaintiffs also bring claims for fraud, negligent misrepresentation, breaches of express and implied warranty, and unjust enrichment. These claims are all premised on the assertion that Defendant's labeling is materially misleading. Because [the court has] already determined that Plaintiffs failed to allege that the Product's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are also dismissed . . . .

*Id.*

While Plaintiff's fraud claim also fails for the additional pleading deficiencies as detailed in Section IV below, the lack of any deceptive act is sufficiently fatal.

Regarding Plaintiff's so-called "constructive fraud" claim, the "elements of a cause of action to recover for constructive fraud are the same as those to recover for actual fraud with the crucial exception that the element of scienter upon the part of the defendant, [e.g.] his [or her] knowledge of the falsity of his representation, is dropped." *Brown v. Lockwood,* 432 N.Y.S.2d 186 (N.Y. App. Div. 1980). As such, this claim is wholly duplicative of Plaintiff's deficient NYGBL claims which also do not require scienter yet fail for the same reason – no plausible allegation of a misleading act. *See Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 26.[8]

Lastly, while an unjust enrichment claim may be premised on deceptive conduct, it is not available "where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.,* 18 N.Y.3d 777, 790 (2012). Here, Plaintiff's unjust enrichment claim is based on the same alleged deceptive conduct and suffers the same pleading deficiencies, mandating dismissal.

## IV.   PLAINTIFF DOES NOT SATISFY THE HEIGHTENED PLEADING STANDARD FOR FRAUD UNDER RULE 9(B)

Just as Plaintiff's general and conclusory claims regarding the alleged presence of PFAS fail to plausibly allege any misleading act, they surely do not meet Fed. R. Civ. P. 9(b)'s heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Lerner v. Fleet Bank. N.A.,* 459 F.3d 273, 290 (2d Cir. 2006). Specifically, "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014); *see also U.S. ex rel. Polanksy v. Pfizer, Inc.*, No. 04-cv-0704 2009 U.S. Dist.

---

[8] The constructive fraud claim additionally fails as plaintiff has not pled the requisite "existence of a fiduciary or confidential relationship warranting the trusting party to repose his [or her] confidence in the defendant and therefore to relax the care and vigilance he [or she] would ordinarily exercise in the circumstances" *Brown*, 432 N.Y.S.2d at 194.

LEXIS 43438, *4 (E.D.N.Y. May 22, 2009). While Plaintiff's Complaint boldfaces each of these categories, as expressed below, the boilerplate allegations that follow each are wholly deficient of any requisite specificity.

### A. Plaintiff's Complaint Fails to Allege Fraud with Specificity

Despite a Complaint filled with references to PFAS, Plaintiff's fraud claim (Count III) is devoid of any sufficient detail regarding purported PFAS in the Product or Defendant's knowledge of it, presumably because Plaintiff is aware her vague allusions to testing (alleged without any specific results, methodology, or specific connection to the batch(es) purchased by Plaintiff as further described in Section I above) and knowledge on the part of Defendant lack the specificity to support a fraud claim's heightened pleading standard. Instead, Plaintiff's fraud count generally alleges that Defendant marketed its Product as possessing "qualities" it did not have:

> Defendant's conduct deceived Plaintiff and Class Members into believing that the Product was manufactured and sold with the represented qualities. Defendant knew or should have known this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet it continued to pervasively market the Product as possessing qualities they do [sic] not have.

Complaint ¶ 120.

This barebones allegation is particularly deficient because as expressed above, it is undisputed, even by Plaintiff, that the Product does indeed contain the nutritional and environmental characteristics listed on the Defendant's website and paragraph 27 of the Complaint. Incredibly, it appears Plaintiff attempts to overcome the failure to plead plausible PFAS contamination allegations under New York's General Business Law claims merely by further ignoring such details in her fraud claims. However, Plaintiff cannot meet Rule 9(b)'s heightened pleading standard via vague, unstated implications to an unpled PFAS presence.

Indeed, the Complaint fails to allege "at a minimum all essential facts that would accompany the first paragraph of any newspaper story." *Dicicco v. PVH Corp.*, No. 19 Civ. 11092, 2020 U.S. Dist. LEXIS 160465, at *6 (S.D.N.Y. Sept. 2, 2020) (holding that plaintiff's "generalized description of his counsel's investigation" into Defendant's alleged retail store price fixing failed sufficiently to plead fraud).

Lastly, Plaintiff's efforts to plead a fraud count without reference to PFAS, is also an attempt to escape the pleading requirements for fraud by omission – specifically a claim that it was Defendant's alleged knowledge of PFAS contamination that made all the undisputed Product representations somehow fraudulent.   Nevertheless, Plaintiff's pleading acrobatics cannot overcome the hornbook law that fraud by omission requires the "non-disclosing party [to have] a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995); s*ee also Harris,* 586 F. Supp. 3d at 241. Such a duty only arises "where the parties have a fiduciary relationship" or "where one party possesses superior knowledge. . . ." *Harris,* 586 F. Supp. 3d at 241; s*ee also Duprere v. Ethicon, Inc*., No. 21cv2605, 2022 U.S. Dist. LEXIS 31096, *14 (S.D.N.Y. Feb. 22, 2022). There is no fiduciary relationship between the parties of the simple commercial transaction at issue here.   Moreover, Plaintiff can make no plausible allegation of Defendant's knowledge of the disputed PFAS presence as the only source of such knowledge in the Complaint is ***Plaintiff's*** own undisclosed testing.

## B. Plaintiff Fails to Plausibly Allege that Defendant Had Knowledge of PFAS in the Product

"Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge." *Devaney v. Chester,* 813 F.2d 566, 568 (2d Cir. 1987); s*ee also, e.g., Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir. 1985). More specifically, plaintiff must "allege facts that give rise to a strong inference of fraudulent

intent." *Lerner,* 459 F.3d at 290. Regarding a defendant's knowledge, claims of fraud cannot be based on "speculation and conclusory allegations." *U.S. ex rel. Youssef v. Tishman Constr. Corp.*, No. 12-cv-03862, 2017 U.S. Dist. LEXIS 15823, at *18 (E.D.N.Y. Feb. 2, 2017) quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990) (dismissing fraud claims for plaintiff's failure to "to allege circumstances that give rise to a strong inference that the defendants knew the statements to be false.")

Here, Plaintiff pleads absolutely no details or basis that Defendant "knew or should have known" that the Product did not possess its marketed "qualities." As expressed above, Plaintiff is presumably implying the alleged presence of PFAS as there are no pleaded allegations that the Product is not, for example, "sugar free," "vegan," "non-GMO," etc. Regarding PFAS, however, the only allegations in the Complaint pertain to ***Plaintiff's*** alleged knowledge of a PFAS presence supported only by counsel's retained testing of an unstated batch(es) of Product samples purportedly detecting unspecified amounts of PFAS via an undisclosed methodology at an unknown date and time. Complaint, ¶¶ 70, 92. There are no facts alleged that would arguably put Defendant on notice of the alleged PFAS content and particularly no express words or phrases pleading Defendant's knowledge of PFAS presence even alleged in the fraud count, let alone allegations providing a "strong inference of fraudulent intent." *See Lerner*, 459 F.3d at 290.

Plaintiff asks this Court to impute Defendant's sufficient knowledge because Plaintiff only claims she has obtained knowledge pursuant to her own vague, undisclosed test results – a wholly deficient theory under law. Even if Plaintiff's results were accepted as accurate, *arguendo*¸ it would raise only the ***possibility*** of contamination, not the requisite knowledge sufficient to sustain a fraud claim. *See Harris,* 586 F. Supp. 3d at 241 (dismissing fraud as the allegations "at most only show

that [defendant] *may* have known that its [product] was *at risk* of contamination. . . .").

Accordingly, Plaintiff's fraud claim cannot stand as a matter of law and warrant dismissal.

## V.  PLAINTIFF'S CLAIMS ARE PREEMPTED AND SUBJECT TO FDA'S PRIMARY JURISDICTION

Plaintiff ignores that FDA regulations already control and speak to disclosure of "incidental additives" in food, and the FDA is already studying and has signaled, specifically, an intent to regulate PFAS in numerous products, including foods. As such, labeling, safety and regulating the acceptable levels of PFAS in food products is squarely within the FDA's primary jurisdiction and should be left to the "special competence" of that "administrative agency." *Reiter v. Cooper,* 507 U.S. 258, 268 (1993). If Plaintiff's claims are not barred by preemption (or otherwise dismissed), they should be dismissed pending FDA review of the broader issue of PFAS in food. Any decision other than dismissing these claims under the consumer protection laws cited by Plaintiff would pose an obstacle to federal policy.

### A.  Plaintiff's Failure to Disclose Claims Are Preempted.

Plaintiff's claims of omission are preempted by the Nutrition Labeling & Education Act ("NLEA"), which includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law. 21 U.S.C. § 343-1(a)(2). The phrase "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or the FDA's implementing regulations. 21 C.F.R. § 100.1(c)(4). Accordingly, states can impose requirements that are identical to those imposed by the Food, Drug, and Cosmetic Act ("FDCA"), but not different from or more

burdensome than those requirements. *See In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).

Plaintiff does not identify any FDA regulation requiring the disclosure of PFAS on food labeling, because none exists. To the contrary, the NLEA, 21 U.S.C. § 343-1(a)(2), a 1990 amendment to the FDCA, expressly preempts manufacturers from having to disclose the presence of "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food," including "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in section 201(s) of the act." 21 C.F.R. § 101.100(a)(3)(iii). Any PFAS allegedly found in the Product would constitute incidental additives that need not be disclosed under FDA's regulations as Plaintiff does not plead that PFAS have any technical or functional effect on the Product. Other courts have preempted claims under the same regulation where plaintiffs sought to require disclosure of other incidental additives. *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-1967, 2009 WL 3762965, at *5 (W.D. Mo. Nov. 9, 2009) (finding that 21 C.F.R. § 101.100(a)(3)(iii) exempted defendants "from disclosing the presence of BPA in their products" and preempted plaintiff's claims because "they would impose disclosure requirements concerning BPA, the exact opposite of the exemption § 343(i)(2) permits").

 Furthermore, because Plaintiff fails to allege any actual levels of PFAS in the Product (aside from vague and misguided comparison to the EPA's interim lifetime health advisory for drinking water that does not even apply to FDA-regulated foods), she cannot argue that PFAS are found in anything more than "insignificant levels."  Plaintiff essentially seeks to impose a PFAS-disclosure requirement for product labels entirely different from the requirements set forth in the federal regulatory scheme set forth by the FDA. Therefore, imposing liability on Defendant would

run afoul of well-settled law that state common law duties "cannot impose obligations beyond, or different from, what federal law requires." *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 588 F. Supp. at 532.  Finally, Defendant's compliance with controlling FDA regulations also serves as a "complete defense" to plaintiff's NYGBL claims. *See* NYGBL §§ 349(d), 350-d(b). [9]

## B.  The Primary Jurisdiction Doctrine Mandates Dismissal of Plaintiff's Claims

While Plaintiff's claims are subject to dismissal for the reasons set forth above, each of the claims should also be dismissed, or in the alternative, stayed, pursuant to the primary jurisdiction doctrine, which "applies where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 505 (2d Cir. 2022) (citing *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-59 (2d Cir. 1994)). A court invokes the primary jurisdiction doctrine when it determines that the agency, not the courts, should have the "initial decision making responsibility." *Id.* (citing *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006)). The Second Circuit has determined that four factors—referred to as the "*Ellis* factors"— guide the analysis as to whether the primary jurisdiction doctrine applies:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

---

[9] *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 411-412 (S.D.N.Y. 2022) ("It is a 'complete defense' to liability under GBL §§ 349 and 350 that an 'act or practice is . . . subject to and complies with the rules and regulations of, and the states administered by, the federal trade commission or any official department, division, commission or agency of the United States.")

*Palmer*, 51 F.4th at 506.

Each of the *Ellis* factors weigh in favor of finding that the FDA has primary jurisdiction. First, resolution of Plaintiffs' claims requires consideration of how to test for PFAS, what level of PFAS is harmful, and what levels of PFAS are acceptable in foods, and the Product. Whether the Product contains impermissible levels of PFAS—or enough PFAS that the Product's labeling should have been changed—is a technical issue that requires policy considerations within the FDA's expertise. And, given its ubiquity, PFAS is a popular subject in the plaintiffs' bar, so there is a likelihood of inconsistent rulings on the issue. *See In re Gerber Prods. Co. Heavy Metals Baby Food Litig.,* No. 1:21-cv-269, 2022 U.S. Dist. LEXIS 189822, at *55 (E.D. Va. Oct. 17, 2022) (multiple courts considering similar issues will "likely result in a patchwork of decisions that vary by location, court, manufacturer, and product, resulting in different labeling standards for substantially similar . . . products produced by different manufacturers"). There is little doubt that PFAS pose novel and complex scientific and regulatory issues that the FDA is grappling with, and PFAS currently present issues outside the scope of the conventional experience of judges, requiring technical considerations within FDA's field of expertise. Moreover, as Plaintiff alleges injuries non-specific to herself and that PFAS endanger the health of a considerable number of persons, the FDA's determination on these issues will materially aid the Court in resolving those issues. Thus, this case should be dismissed under the primary jurisdiction doctrine, if not otherwise dismissed.

## CONCLUSION

Wherefore Defendant respectfully requests that this Court issue an Order in favor of Defendant, dismissing Plaintiff's claims in their entirety, with prejudice.

Dated: New York, New York
May 22, 2023

**HARRIS BEACH PLLC**

s/ Kelly Jones Howell
Kelly Jones Howell, Esq. (KJH-7804)
Judi Abbott Curry, Esq. (JAC-4706)
Wayne L. Gladstone, Esq. (WLG-1680)
**Attorneys for Defendant**
**BioSteel Sports Nutrition, Inc.**
100 Wall Street, 23rd Fl.
New York, New York 10005
Tel:    (212) 687-0100
Fax:    (212) 687-0659

25